UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ELIZABETH CARLEY,

Plaintiff,

v.

JO GENTRY, *et al.*,

Defendants.

Case No. 2:17-cv-02670-MMD-VCF

ORDER

## I. SUMMARY

*Pro se* Plaintiff Elizabeth Carley, who is incarcerated and in the custody of the Nevada Department of Corrections ("NDOC"), sued various prison officials under 42 U.S.C. § 1983 for allegedly impeding her access to the courts. (ECF No. 89; *see also* ECF Nos. 74, 88, 143 (construing Carley's Complaint as comprising a single claim for denial of access to the courts).) Before the Court is Defendants' motion for summary judgment.[1] (ECF No. 119.) Defendants argue that some of the grievances Carley filed are barred by the statute of limitations, and those that are not fail as a matter of law. (*Id.*) Carley responds that she has sufficiently stated multiple theories for relief under her access to courts claim, therefore summary judgment should be denied. (ECF No. 138.)

As further explained below, the Court agrees with Defendants that some of Carley's grievances are barred by the statute of limitations, but disagrees that they have demonstrated their entitlement to judgment as a matter of law. Accordingly, the Court will grant the Motion in part, and deny it in part.

///

///

///

[1]Carley responded (ECF No. 138) and Defendants replied (ECF No. 154).

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.

### A. Procedural History

Carley is incarcerated at Florence McClure Women's Correctional Center ("FMWCC"), a prison within the NDOC. Carley's initial Complaint was received on October 16, 2017 (ECF No. 1) and filed on September 5, 2018. (ECF No. 4.) Carley amended the complaint three times. (ECF Nos. 27 ("First Amended Complaint" or "FAC"), 75 ("Second Amended Complaint" or "SAC"), 89 ("Third Amended Complaint" or "TAC").) The Third Amended Complaint is the operative complaint. (ECF No. 89.)

The Court has repeatedly construed Carley's complaints to allege a single claim for denial of her constitutional right of access to the courts. (ECF Nos. 74 at 1, 143 at 2.) Carley's single claim appears to have two components:

> (1) that NDOC officials improperly denied her request for inmate-to-inmate correspondence, resulting in an unsuccessful state habeas corpus petition; and (2) law library supervisor Cyndi Ruiz at FMWCC improperly obstructs her access to the law library, which is otherwise inadequately equipped to allow her to vindicate her constitutional rights.

(ECF No. 143 at 2.) Defendants are former NDOC Director Charles Daniels, current NDOC Director James Dzurenda, former FMWCC Warden Jo Gentry, former FMWCC Warden Dwight Neven, former FMWCC Associate Warden Tanya Hill, FMWCC Associate Warden Gabriella Najera,[2] former FMWCC Acting Director Sheryl Foster, former FMWCC Deputy Director of Programs Kim Thomas, FMWCC Caseworker Patrick Vejar, and FMWCC Law Library Supervisor Cyndi Ruiz.

Defendants move for summary judgment on both grounds of the claim. (ECF No. 119.)

### B. Carley's Post Conviction Proceedings

Carley was charged with and convicted of multiple counts of forgery in Nevada state court. (ECF No. 119-10 at 2.) She was one of three co-defendants in state case number C285105. (*Id.*) One of her co-defendants was James Stojic. (ECF No. 147 at 59.)

[2]Najera was formerly known as Gabriella Garcia.

The district court entered judgment on June 20, 2014. (ECF No. 119-10 at 7-8.) She appealed her conviction, but her appeal was denied January 15, 2015. (ECF No. 147 at 64.) Stojic also appealed his conviction, and the Court of Appeals reversed. (*Id.* at 48-49.) Carley alleges that because issues with the breadth of the search warrant which led to their arrests was integral to Stojic's appeal, his post-conviction litigation was intimately linked to hers. (ECF No. 89 at 17.)

Carley filed three petitions for writ of habeas corpus in state court on April 8, 2015, June 8, 2016, and December 5, 2017. (ECF Nos. 119-10 at 7-9.) Her first habeas petition was denied by the state district court on June 1, 2015. (*Id.* at 9.) She appealed to the Nevada Court of Appeals, which affirmed the district court on December 18, 2015. (ECF No. 147 at 43-46.) Carley then filed a collateral petition for writ of habeas corpus in federal district court on September 21, 2016. (*Id.* at 64.)

**C. NDOC Policy Regarding Mail and Access to the Courts**

The policies governing access to the courts and inmate mail for those incarcerated in NDOC prisons are laid out in via an administrative regulation ("AR"). Some ARs require individual prisons to implement operational procedures ("OP"). In the NDOC, inmates' rights to reasonable access to the law library, library assistants, and legal mailings, are governed by AR 722 "Inmate Legal Access." (ECF No. 119-2.) Under AR 722.04(1), inmates may retain attorneys or authorized representatives, obtain assistance "from institutional inmate library assistants," and obtain services from public defenders or legal aid agencies. (*Id.* at 7.) Moreover, AR 722.04(8) permits inmates to assist each other in the preparation of legal documents. (*Id.* at 8.)

AR 722 requires each prison to implement an OP for legal access. (*Id.* at 16.) Within FMWCC, specifically, OP 722 governs FMWCC inmates' access to the FMWCC law library and legal assistance by other inmates. (ECF No. 119-4.) OP 722.01(2) requires inmates to identify "active litigation" on which the inmate seeks to work. (*Id.* at 2-3.) OP 722.02 explains how inmates may be hired as Law Library Assistants and Law Library Clerks, and how inmates who are not officially Library Assistants or Clerks may informally

help other inmates. (*Id.* at 5-7.) "Inmate assistance in preparation of legal documents is limited to individuals within FMWCC general population." (*Id.* at 7.) Per OP 722.02(8), indigent inmates may accrue a maximum of $100.00 debt in copy charges in all cases, which, at $0.10 per page, is 1000 pages of copies. (*Id.*)

Prison mail policy and procedure is governed by AR 750 "Inmate General Correspondence and Mail." (ECF No. 119-3.) AR 750.04 governs correspondence between incarcerated persons. (*Id.* at 9.) General correspondence between inmates is limited to correspondence "between immediate family members." (*Id.*) Legal correspondence is permitted if the inmates "are co-defendants or co-plaintiffs in active post conviction litigation or pursuant to court order." (*Id.*) Before an inmate can correspond with another inmate housed in a different institution, they must obtain and complete a correspondence request form from their caseworker, who will forward it to the prison warden. (*Id.*) The wardens at both institutions must approve the correspondence request before permission is granted. (*Id.*) AR 750 requires each prison to implement an OP for mail procedures. (*Id.* at 13.) Neither party attaches or references an OP for FMWCC that implements AR 750.

**D. Grievances Regarding Correspondence with Stojic**

Carley alleges that Defendants denied her access to legal documents necessary for her post-conviction relief by denying inmate-to-inmate legal correspondence with Stojic. (ECF No. 89 at 4.) Stojic is currently housed at Southern Desert Correctional Center ("SDCC"), another prison within the NDOC.

Carley first submitted a request to correspond with Stojic on January 14, 2013, when he was housed at Clark County Detention Center. (ECF No. 147-6 at 59 ("First Correspondence Request").) The First Correspondence Request was approved on February 7, 2013. (*Id.*)

At some point Stojic was transferred to SDCC, and on January 2, 2015, Carley filed a renewed request to correspond with him. (*Id.* at 62 ("Second Correspondence Request").) The Second Correspondence Request was denied by Defendants Vejar and

Gentry on January 6, 2015. (*Id.*) The reason given for denial was "NO OPEN / PENDING CASES." (*Id.*)

Carley filed Grievance 20062994029 on January 29, 2015, stating that permission to correspond with her codefendant, which was previously granted, had been denied when he transferred institutions. (ECF No. 138-1 at 11.) Carley argued this was improper under AR 750.06, which states "once full approval is obtained, no further approval is necessary . . ." (*Id*.) Defendant Vejar denied the grievance at the informal level, stating Carley was required to file another correspondence request form because Stojic had transferred out of the NDOC system and was now at a non-NDOC facility. (ECF No. 119-6 at 59.) Moreover, Vejar noted, there was no noticed open case in which Carley had a codefendant. (*Id.*) Accordingly, under AR 750, she was not necessarily permitted to correspond with another inmate. (*Id.*) The grievance was finally resolved February 4, 2015. (*Id.*)

Carley submitted a third request to correspond with Stojic on April 13, 2015. (*Id.* at 63 ("Third Correspondence Request").) Vejar and Gentry also denied the Third Correspondence Request, stating "CASE IS CLOSED." (*Id.*)

Carley submitted a fourth request to correspond with Stojic on June 12, 2015. (*Id.* at 64 ("Fourth Correspondence Request").) In her request, she included the case numbers for both her and Stojic's criminal case, C285105. (*Id.*) The Fourth Correspondence Request was also denied for the stated reason, "NO OPEN CASES." (*Id.*) Gentry also issued a notice to Carley that she should not submit another request unless there is a change in the case. (*Id.* at 65.)

Carley filed a second grievance, Grievance 20063004122, on July 12, 2015, stating she is unable to get "proper legal assistance" from the law library and is therefore again requesting to correspond with Stojic. (ECF No. 119-8 ("Second Correspondence Grievance").) Carley grieved that her correspondence with Stojic is "very important to [her] legal process" and that "Stojic is acting as the equivalent of [her] legal advisor." (*Id.* at 5.) She referred to Stojic repeatedly as her co-defendant, and claims "we are both actively

litigating in appellate court." (*Id.* at 4.) Carley stated specifically that she wanted to discuss with Stojic how to properly prepare her habeas corpus case. (*Id.* at 4-5.)

Defendant Vejar denied the Second Correspondence Grievance, stating that AR 750.04 1 B permits correspondence between incarcerated persons only if they are co-parties in active post-conviction litigation or pursuant to a court order. (*Id.* at 11.) Vejar explained that Stojic could not serve as Carley's legal counsel. (*Id.*) Carley appealed Vejar's decision, and Defendant Gentry denied the appeal, stating that AR 722 only permits inmates at the same facility to provide assistance to each other. (*Id.* at 9) Carley again appealed, and Defendant Foster also denied the appeal. (*Id.* at 7.) Like Vejar, Foster indicated that AR 750 permits legal correspondence between inmates if they are co-parties in ongoing post-conviction litigation, and that Stojic was not Carley's co-party in any ongoing case. (*Id*.) The Second Correspondence Grievance was finally resolved on October 22, 2015. (*Id.*)

Carley submitted a fifth request to correspond with Stojic on September 24, 2015. (*Id.* at 67 ("Fifth Correspondence Request").) Vejar and Gentry denied the request, stating that the Nevada Supreme Court had closed Stojic's case. (*Id.*)

Carley filed Grievance 20063013143 on December 11, 2015, stating again she was improperly denied approval to correspond with Stojic. (ECF No. 119-9 ("Third Correspondence Grievance").) Carley explained she needed to discuss her case with Stojic because he was actively litigating a case and "what happens in court affects my case too." (*Id.* at 3.) Defendant Najera denied the Third Correspondence Grievance on December 29, 2015, explaining it lacked requisite documentation. (*Id.*) Carley resubmitted the Third Correspondence Grievance and Najera again rejected it on January 27, 2016. (*Id.* at 15.)

On February 18, 2016, Carley submitted a sixth request to correspond with Stojic. (ECF No. 147-6 at 60 ("Sixth Correspondence Request").) Again, Carley listed Stojic as her co-defendant. (*Id.*) Najera approved the request on March 31, 2016. (*Id.*) The

approval notes "supportive documentation is attached {LEGAL CORRESPONDENCE} this is only valid during pending litigation." (*Id.*)

Carley alleges that Defendants interpret "ongoing litigation" and "codefendants" too narrowly. Because Stojic was not listed as a party on the docket of her state habeas case, Defendants refused to let her discuss their criminal case or share legal information, despite the fact that they were codefendants in a single case and were both actively pursuing post-conviction litigation.

**E. Access to Law Library**

Carley alleges inadequate access to legal resources at FMWCC. (ECF No. 89 at 4-5.) Between February 9, 2015, and September 24, 2019, Carley filed a total of 22 grievances relating to her use of the law library. (ECF No. 119-15.) In her grievances, Carley objected to several policies which prevented her from accessing legal resources at FMWCC, including: (1) insufficient time at the law library, typically no more than two hours per week, to prepare her pending habeas litigation; (2) unreasonable delays, sometimes up to 22 days, in obtaining appointments at the FMWCC law library; (3) a policy change at FMWCC that prevented general population inmates from renting case law, as opposed to purchasing it, which she cannot afford as an indigent inmate; and (4) ongoing difficulties with the law librarian Cyndi Ruiz that affected her ability to seek meaningful legal assistance.

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome

of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Carley asserts her First Amendment right to access the courts was improperly infringed in essentially two ways, which, together, compounded the effect of their harm. First, she claims that because she was prevented from corresponding with Stojic, she was unable to obtain necessary information and documents to prepare her state habeas petition. (ECF No. 89 at 15-17.) Second, Carley asserts that she did not have sufficient

access to the law library and, as a result, her attempts to prepare her own legal documents were thwarted. (*Id.* at 17-20.)

Defendants claim they are entitled to summary judgment because Carley's access to courts claim fails as a matter of law on both theories. Defendants also argue that some of Carley's grievances are barred by the statute of limitations, that they did not personally participate in the alleged violations and therefore cannot be liable under § 1983, and that they are entitled to qualified immunity.

The Court first addresses which grievances it may consider, then turns to the merits of Carley's claims. Because the Court finds (1) Defendants have failed to demonstrate they are entitled to judgement as a matter of law; (2) Defendants Foster, Gentry, Najera, Neven, Ruiz, Thomas, and Vejar personally participated in the alleged violations; and (3) a genuine dispute of fact exists about whether Carley's constitutional rights were violated, the Court will deny Defendants' Motion as to these Defendants.

**A. Statute of Limitations**

Before it reaches the merits of Carley's claims, the Court must determine which of Carley's grievances may be considered. Defendants argue that some of Carley's claims are barred by the statute of limitations.

As a preliminary matter, Defendants inaccurately state that Carley's Complaint was not filed until September 16, 2019.[3] (ECF No. 119 at 9.) However, Carley initiated her case on October 16, 2017 (ECF No. 1) and her original Complaint was filed September 5, 2018. (ECF No. 4.) Defendants then argue that Carley's inmate correspondence claims which accrued before January 6, 2017 (ECF No. 119 at 9), and Carley's library access claims which accrued before November 16, 2016 (*id.* at 10), are barred by the statute of limitations. Defendants arrive at this limitations date by applying Nevada's two-year statute of limitations, NRS § 11.190(4)(e), and adding the applicable tolling for cases based on inmate grievances, *see Wisenbacker v. Farwell*, 341 F. Supp. 2d 1160, 1165 (D. Nev. 2004) (tolling the statute of limitations until the date a grievance is resolved).

[3]Defendants cite to ECF No. 75, the SAC, which was filed on December 4, 2019. The SAC, however, is neither the initial nor the operative complaint in this matter.

In a prisoner civil rights action, a complaint is considered filed "when it is placed in the actual or constructive custody of the clerk." *United States v. Dae Rim Fishery Co., Ltd.*, 794 F.2d 1392, 1395 (9th Cir. 1986); *see also Toliver v. Sullivan Cnty.*, 841 F.2d 41 (2d Cir. 1988) (reasoning that a *pro se* prisoner's *in forma pauperis* civil rights complaint was deemed "filed" when received by *pro se* court office). Even when a prisoner does not comply with the local rules or submits an incomplete application to proceed *in forma pauperis*, the complaint is considered filed when the Court receives it. *See Ordonez v. Johnson*, 254 F.3d 814, 816 (9th Cir. 2001) (finding prisoner's complaint was constructively filed the date the court received it, despite its not being in the proper form). As a matter of logic, complaints subject to screening under 28 U.S.C. § 1915A are constructively filed when the district court receives the complaint, not when screening is completed. The Court therefore considers Carley's constructive filing date October 16, 2017. Accordingly, it may only consider claims that accrued on or after October 16, 2015.

**1. Denial of Inmate Correspondence**

Carley filed three grievances relating to her denial of inmate-to-inmate correspondence. (ECF No. 119-6 at 36, 42-43, 59.) The First Correspondence Grievance was initiated January 29, 2015. (*Id.* at 59.) The statute of limitations was tolled until its resolution on February 4, 2015. (*Id*.) Carley therefore hand until February 4, 2017, to file a lawsuit based on this grievance and failed to do so. Claims based on the First Correspondence Grievance are therefore barred.

The Second and Third Correspondence Grievances were initiated July 12, 2015, and December 11, 2015, respectively. (*Id.* at 42, 36.) The statute of limitations was tolled until their respective resolutions on October 22, 2015, and December 29, 2017. (*Id.* at 43, 36.) Carley therefore had until October 22, 2017, to file a lawsuit based on the Second and Third Correspondence Grievances, which she constructively did on October 16, 2017. (ECF No. 1.) Accordingly, claims based on the Second and Third Correspondence Grievance are not barred by the statute of limitations.

///

**2. Library Access**

As explained above, any grievances completed October 16, 2015, will not be considered time barred. Of Carley's 22 library-related grievances, only nine received a final response prior to October 16, 2015.[4] (ECF No. 119-15 at 2-3.) The other 15 were resolved within two-years of the complaint's constructive filing date,[5] and therefore fall within the statute of limitations. (*Id.*)

Defendants argue that the grievances filed within the appropriate limitations period merely reiterate a prior, time-barred issue. (ECF No. 119 at 11.) They suggest that the statute of limitations began to run the first time that Carley became aware of her alleged injury—November 16, 2014. (*Id.* at 10.) Defendants argue the latest the statute of limitations could be tolled is December 29, 2015, for her retaliation claim (*id.*), April 3, 2015, for her denial of free legal copies (*id.*), and April 3, 2015, for her denial of access to the law library (*id.* at 11), as those were the dates her first grievances finally resolved. Carley contends that each grievance represents "its own separate issue" and is entitled to its own tolling period. (ECF No. 138 at 4.) The Court agrees with Carley.

Carley is not barred from asserting claims based on her later-filed grievances simply because they allege an ongoing harm that began prior to the limitations period. Indeed, the Supreme Court has recognized that "[e]ach discrete . . . act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). While this Court will not go so far as to include Carley's otherwise time-barred claims as part of a continuing violations theory, neither will it exclude Carley's timely filed claims because her earlier grievances may be time-barred. *See Flynt v. Shimazu*, 940 F.3d 457, 462 (9th Cir. 2019) ("When the continued enforcement of a statute inflicts a continuing or repeated harm, a new claim arises (and a new limitations period

---

[4]Those grievances are numbers 20062994604, 20062994905, 20062994906, 20062997525, 20062995933, 20062995938, 20062995490, 20062998690, 20062998884. (ECF No. 119-15 at 2.)

[5]Those grievances are numbers 20063004476, 20063012753, 20063014408, 20063014647, 20063017570, 20063037260, 20063043359, 20063043666, 20063045183, 20063048710, 20063054143, 20063089441, 20063090136, (ECF No. 119-15 at 2-3.)

commences) with each new injury."). Carley may therefore pursue her claims based on grievances that were resolved on or after October 16, 2015.

**B. First Amendment Right to Access to the Courts**

The Court now considers whether Defendants have demonstrated they are entitled to judgment as a matter of law on Carley's access to courts claim. In *Bounds v. Smith*, the Supreme Court held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with the adequate law library or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, *Bounds* "guarantee[d] no particular methodology but rather the conferral of a *capability*—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356 (1996). Instead, "[t]he tools [the First Amendment] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally." *Id.* at 355. It is required, however, that "resources meet minimum constitutional standards sufficient to provide meaningful, though perhaps not 'ideal,' access to the courts." *Phillips v. Hust*, 588 F.3d 652 (9th Cir. 2009).

Many access-to-courts claims fail because the plaintiff is unable to assert an actual injury. Accordingly, the Court will first determine whether Defendants have shown Carley has failed to demonstrate an actual injury as a matter of law. Because the Court finds they have not so shown, it will then consider whether the alleged violations form a claim that no reasonable jury could find caused her injury. The Court will first address Carley's argument about her inability to correspond with Stojic, and will then address Carley's argument that she was denied adequate access to legal resources.

**1. Actual Injury**

Inmates do not have "an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. Accordingly, an inmate suing for denial of access to courts must allege an "actual injury" that occurred as a result of deficient legal assistance.

*Id*. An actual injury occurs when "the alleged shortcomings in the library or legal assistance program hindered [an inmate's] efforts to pursue a legal claim." *Id*. For example, inability to use a prison law library to research a criminal appeal is an actual injury. *See Hebbe v. Pliler*, 627 F.3d 338, 341 (9th Cir. 2010).

Defendants claim Carley cannot show actual injury because she was able to file several habeas petitions. (ECF No. 119 at 22.) But the standard Defendants articulate demands more than precedent requires. Defendants claim Carley "must show the loss of a 'nonfrivolous' claim." (*Id.* 2.) But *Christopher v. Harbury*, the case Defendants cite to for this proposition (*id.*), contemplates actual injury when denial of access "caused the loss or inadequate settlement of a meritorious case . . . the loss of an opportunity to sue . . . or the loss of an opportunity to seek some particular order or relief." 536 U.S. 403, 414 (2002). The fact that Carley was able to timely file a habeas petition does not necessarily mean that she incurred no actual injury. Indeed, Carley argues that her petition was denied as a direct result of her inability to access necessary documents from Stojic and restricted ability to research her arguments. (ECF No. 138 at 1, 3, 9-10.) She points specifically to the Nevada Supreme Court's ruling, rejecting one of her grounds as lacking evidentiary support. Defendants do not make any argument, supported by evidence or otherwise, that Carley's habeas petition was not meritorious or that it was unaffected by her limited access to the library and inability to communicate with Stojic.

Defendants have failed to demonstrate they are entitled to judgment as a matter of law that Carley suffered no actual injury due to Defendants' restrictions on her correspondence with Stojic or her access to legal resources at FMWCC.

**2. Correspondence with Stojic**

Prison inmates "enjoy[] a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). "However, a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 79 (1987)). "Legitimate penological interests include 'security, order, and

rehabilitation.'" *Id.* (citation omitted). Relatedly, "[u]nder [the Supreme Court's] right-of-access precedents, inmates have a right to receive legal advice from other inmates only when it is a necessary 'means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Shaw v. Murphy*, 532 U.S. 223, 232 n.3 (2001) (quoting *Lewis*, 518 U.S. at 350-51).

NDOC has propagated rules for incoming mail (AR 750.02), outgoing mail (AR 750.03), and correspondence between incarcerated persons (AR 750.04(1)). (ECF No. 119-3 at 5-10.) Inmates' rights to send mail to other inmates are restricted to (1) general correspondence between immediate family members and (2) legal correspondence between codefendants or co-plaintiffs in active litigation. (*Id.* at 9-10.) "When assessing the constitutionality of prison regulations that affect inmates' constitutional rights . . . we ask (1) whether there is 'a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; (2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; (3) what 'impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and (4) whether there is an 'absence of ready alternatives.'" *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (quoting *Taylor v. Safley*, 482 U.S. 78, 89-91 (1987)).

Carley alleges that that Defendants purposefully misinterpreted AR 750 to deny her request to correspond with Stojic without any legitimate penological interest. (ECF No. 138 at 1.) As a result, Carley claims she was denied access to legal documents from Stojic which were necessary to her post-conviction relief. (*Id.* at 3.)

Defendants' Motion states the rule in *Witherow*, but does not offer any explanation how the restrictions on inmate correspondence serve a legitimate penological interest, much less what that interest is. (ECF No. 119 at 18-19.) Because Defendants do not articulate how the restrictions on inmate-to-inmate correspondence serve a legitimate penological interest, or what penological interest it serves, the Court cannot determine whether AR 750 has a "valid, rational connection" to that interest. *Nordstrom*, 856 F.3d at

89. Accordingly, the Court will not grant the Motion as to Carley's correspondence arguments.

**3. Access to Legal Resources at FMWCC**

Defendants next argue that Carley's rights were not violated because she had sufficient access to the law library. (ECF No. 119 at 21.) Defendants do not dispute that Carley received limited and delayed access to the library, but instead argue that having 332 research appointments between January 2, 2014, and September 17, 2020—in other words, less than one appointment per week on average over the course of six and half years—is objectively sufficient. (*Id.*) The Court disagrees.

Again, Defendants minimize the protections the First Amendment requires. Defendants argue "there is no minimum hours required for accessing the law library." (*Id*.) But the Ninth Circuit has recognized that an inmate's complete inability to access the law library and its resources would violate their First Amendment rights. *See Hebbe*, 627 F.3d at 342-43 (applying *Lewis* to find that "penal institutions have a duty to afford prisoners 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts'" and the plaintiff "had a right to use the prison law library to research the constitutional, jurisdictional, or other issues he might raise on appeal"). Accordingly, some minimum hours of access must be required.

Moreover, the case that Defendants cite to for its proposition that no minimum hours are required in fact holds "[t]he existence of an adequate law library does not provide for meaningful access to the courts if the inmates are not allowed a reasonable amount of time to use the library." *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 858 (1985). The library that the Ninth Circuit found adequately accessible in *Lindquist* served 40 inmates at a time and was open for a minimum of 11 hours a day. *See id.* Defendants provide no evidence of the FMWCC's capacity, but OP 722 states that the library will be open "during normal business hours Monday through Friday, excluding holidays, or such days as staffing or safety and security needs of the institution preclude

such availability. (ECF No. 119-4 at 2.) Defendants have not shown that FMWCC's law library was objectively reasonably accessible.

But even if Defendants had so shown, Carley repeatedly alleges that the time she was in practice given at the law library was insufficient to meaningfully prepare her habeas petition. She grieved[6] that she is only given 1.5 hour appointments, but was not able to request case law if she waited too long into her appointment and was asked to leave before her time was up. (ECF No. 138-1 at 64-67.) Carley's experience is corroborated by the change in library access policy memo dated April 17, 2017. (ECF No. 147 at 41.) The memo informs inmates that they are limited to a maximum of two appointments per week, in 50 minute increments. (*Id.*)

Carley further grieved[7] that general population inmates were denied access to case law rentals so that she could work on her claims outside of the library, while simultaneously being restricted to two hours maximum per week of library time. (*Id.* at 86.) She clearly articulates that the OP restricting rentals "makes it next to impossible to research law and then to submit any meaningful paper on my own in any reasonable timeframe for my active case." (*Id.* at 87.) In response, Defendant Neven wrote "Inmates can be given up to four (4) hours a week per inmate in General Population . . . which is very reasonable . . . You can purchase case law. We no longer 'rent' case law to GP inmates. The computer system in the library has necessary case law that NDOC must provide to inmates." (*Id.* at 138-1 at 88.) But Carley appealed, arguing that while an inmate may theoretically be allowed to schedule four hours a week of library time, she has never had such access in practice. (*Id.* at 94.) Defendant Najera denied one of Carley's successive grievances[8] by stating that one appointment per week each week of August, lasting 115 minutes each, "verifies appropriate law library access." (ECF No. 138-1 at 105.)

---

[6]Grievance 20063043359.

[7]Grievance 20063048710.

[8]Grievance 20063054143.

Carley also attempted to grieve unreasonable delays in access to the law library.[9] In Grievance 20063054902, she claimed she filed two requests for appointments on August 30, 2017. (ECF No. 138-1 at 132, 141.) The appointments she received were 19 and 22 days from the request, respectively. (*Id.*)

These three issues—limitation of access to the library, limitation of access to resources outside of the library, and delay in scheduling appointments—are not disputed by Defendants. Instead, they argue that they are entitled to judgment as a matter of law that Carley's access to legal resources was "meaningful." The Court is not persuaded that the law requires such a result. Whether Carley's access to legal resources at FMWCC was meaningful to prepare for her habeas petition is a question for the ultimate decider of fact. Accordingly, the Court will not grant the Motion as to Carley's access to legal resources arguments.

**4. Copies**

Several of Carley's grievances relating to both her correspondence with Stojic and access to the law library were denied because she did not attach proper documentation to her grievance proving she was either actively litigating a case with Stojic or on her own.[10] Carley then grieved[11] the double-bind requirement of not being able to afford copies of documents that prove she was actively litigating in post conviction proceedings, yet also being required to attach copies of such proof to demonstrate her entitlement to correspondence with Stojic and law library access. (ECF No. 138-1 at 161-63.) Defendants Daniels and Najera denied the grievance (*id.* at 151, 156), citing AR 722.01.07, which states, "Copies of legal documents requested by inmates may be made for a nominal fee. (A) Inmates are not constitutionally entitled to free copy work . . . (D)

---

[9]Her grievance was rejected per AR 740.03(4)(c) which prohibits inmates from filing more than one grievance in a seven day week.

[10]*See, e.g.*, Grievance 20063004122 (ECF No. 119-6 at 42) stating no proof of ongoing litigation with Stojic, Grievance 20063004476 (*id.* at 40) stating onus is on inmate to show appointments are to pursue open/active litigation, Grievance 20063013143 (*id.* at 36) denied for failing to attach supportive documentation that case is active.

[11]Grievance 20063016817.

Inmates can only accrue a maximum of $100 debt for copy work expenses for all case, not per case." (ECF No. 119-2 at 4.)

Carley then specifically grieved[12] that she was prevented from making copies to satisfy the requirements of the grievance process. (ECF No. 138-1 at 146.) In a Kafkaesque turn, that grievance was denied because she "failed to attach any supportive documents indicating the refusal for requested copy work." (*Id*.)

Defendants argue that because there is no constitutional right to free copies, Carley cannot articulate a First Amendment violation due to restricted access to photocopies. (ECF No. 119 at 22.) To the extent that Carley is attempting to claim she is entitled to free copies as an indigent defendant, she may not proceed with that claim as the law recognizes no such right. *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991) ("[A] denial of free photocopying does not amount to a denial of access to the courts."). However, cases that have rejected photocopy claims typically refer to inmates' rights to conduct legal research, and often refer to alternatives that inmates may use, such as carbon paper. *See id.* Here, Carley is contending that Defendants are disallowing her from corresponding with Stojic about their shared case and post conviction strategy, and disallowing her from making library appointments to research her habeas case, while also rejecting her grievances because she is not permitted to make the photocopies that the prison requires. In context, Carley's repeated grievances illustrate how NDOC's grievance process and requirement that even indigent inmates attach documentation of active litigation may be overly burdensome without a legitimate purpose.

Accordingly, the Court grant the Motion insofar as Carley is alleging an independent ground for relief on her access to courts claim based on asking for unlimited free copies. However, the Court denies the Motion insofar as Carley is grieving that requiring paper documentation of ongoing litigation unreasonably delayed processing her correspondence requests and library access.

///

[12]Grievance 20063017570.

**C. Defendants' Personal Participation**

Defendants argue that only Defendant Ruiz personally participated in Carley's alleged First Amendment violation. (ECF No. 119 at 11-17.) Their argument primarily rests on the assertion that merely denying grievances does not constitute personal participation for the purposes of § 1983 liability.

"A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (citation omitted). "The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right." *Id.* (citation omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1098 (9th Cir. 1998) (internal alteration and quotation marks omitted). However, "[t]here is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1046 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his [or her] subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.*

"Generally, one cannot state a constitutional claim based on their dissatisfaction with the grievance process." *Gates v. LeGrand*, Case No. 3:16-cv-00321-MMD-CLB, 2020 WL 3867200, at *5 (D. Nev. Mar. 27, 2020) (citing *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014)). However, the Ninth Circuit has confirmed that responding to a grievance may rise to the level of personal participation for a § 1983 claim. *See id.* (citing *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012), *overruled on other grounds by Peralta v. David*, 744 F.3d 1076 (9th Cir. 2014)). When grievances demonstrate that wardens and associate wardens "were aware" of the alleged violation,

but “failed to act to prevent further harm,” they may be liable under § 1983. *Id.*; *see also Jackson v. State of Nev.*, Case No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019) (juxtaposing having “decision-making authority or ability to resolve the underlying issue grieved” with “merely denying a grievance”).

After reviewing the parties’ arguments and exhibits, Court agrees that Carley has failed to allege personal participation on any claims against Defendants Dzurenda, Daniels, and Hill that are not time-barred. However, the Court will not dismiss the remaining Defendants because Carley has demonstrated they did personally participate in denying her permission to correspond with Stojic and access to legal resources. The Court will first explain why Dzurenda, Daniels, and Hill must be dismissed. The Court will then turn to evidence Carley provides that shows the remaining Defendants did personally participate in the alleged violations.

**1. Dzurenda, Daniels, and Hill**

Defendants James Dzurenda and Charles Daniels are the former and current Director of the NDOC, respectively. (ECF No. 119 at 13.) Carley argues that Dzurenda and Daniels personally participated in the denial of her access to the courts because they “create and enforce policy” that resulted in the alleged violations. (ECF No. 138 at 11.) Carley argues Dzurenda and Daniels are liable because they are “responsible for” and have “authority over” the FMWCC law library and NDOC employees. But there is no evidence that either Dzurenda or Daniels were personally involved in denying Carley’s correspondence requests or resolving any of Carley’s grievances, nor that they were even aware of her allegations. The claims Carley alleges against Dzurenda and Daniels are based on a supervisory liability theory. Because Carley has not offered proof that Dzurenda or Daniels directed or knew about the alleged violations, the Court will dismiss them from this case.

Hill did deny grievances relating to Carley’s access to the law library—however, the grievances Hill denied were resolved more than two years before Carley initiated this

lawsuit.[13] Even assuming that Hill personally participated in the alleged violations, Carley does not have any claims against Hill which are not time-barred. Accordingly, the Court will also dismiss Hill from this case.

**2. Grievance 20063004122**

Defendants Foster, Gentry, and Vejar personally participated in restricting Carley's correspondence with Stojic. On July 12, 2015, Carley grieved that she was improperly denied permission to correspond with Stojic. (ECF No. 138-1 at 13-27.) Carley argued that she depended on Stojic as a legal advisor (*id.* at 16), that they were codefendants (*id.*), and they were both actively litigating in state court (*id.* at 15). Defendant Vejar denied the grievance at the informal level, Defendant Gentry denied it at the first level, and Defendant Foster denied it at the second level. (*Id.* at 13, 19, 21.)

In his denial, Vejar actively interprets AR 722, AR 750, and NRS §§ 209.131, 208.165 to find that NDOC regulation and Nevada law do not permit Carley to correspond with Stojic. (*Id.* at 13.) Vejar states that Stojic may not serve as Carley's legal advisor and that Carley can use personnel in the law library for that purpose. (*Id.*) Accordingly, the Court finds that Vejar was personally involved in preventing Carley from corresponding with Stojic, and will not dismiss him from this case.

Gentry reviewed Vejar's denial and concluded "AR 722 indicates that inmates must be at the same facility to provide assistance to each other." (*Id.* at 19.) Gentry interpreted Carley's request and reasoned that it was disallowed by policy. Moreover, Gentry provides separate reasoning from Vejar, indicating that she independently reviewed the grievance and decided to deny it. (*Id.*) Foster then reviewed Gentry's denial, and determined that AR 750 did not permit inmate-to-inmate correspondence between Stojic and Carley. (*Id.* at 23.) Again, Foster provides separate reasoning from Gentry, indicating that she independently reviewed the grievance and decided to deny it. (*Id.*)

---

[13]The grievances Hill denied were 2006994493 (resolved February 20, 2015), 20062994604 (resolved May 8, 2015), A20062994905 (resolved April 3, 2015), 20062994906 (resolved April 3, 2015), 20062995933 (resolved April 3, 2015), 20062995940 (resolved April 3, 2015), 20062997525 (resolved April 3, 2015), 20062998690 (resolved April 30, 2015), 20063012756 (resolved December 7, 2015),

Vejar, Gentry, and Foster each personally participated in preventing Carley from corresponding with Stojic. Accordingly, Carley's claim may proceed against them.

**3. Grievance 20063048710**

Defendants Thomas and Neven personally participated restricting Carley's access to legal resources by denying Grievance 20063048710. On May 31, 2017, Carley grieved that FMWCC was no longer allowing general population inmates to rent case law and that she did not receive enough time in law library. (ECF No. 147-6 at 83-97.) After a non-party caseworker denied the grievance at the informal level, Defendant Neven denied it at the first level, and Defendant Thomas denied it at the second level. (*Id.* at 88, 93.)

Neven reviewed the denial of Grievance 20063048710 at the informal level and rejected Carley's arguments. (*Id.* at 88.) Despite the fact that Carley raised the new OP 722 was not providing reasonable access to courts, Neven only reiterated that FMWCC no longer permits rentals of case law to general population inmates and advised that inmates could schedule up to four hours of library time. (*Id.*) Thomas reasoned that FMWCC must provide services to "over 1000 inmates" and that Carley's access is reasonable. (*Id.* at 93.) Both Neven and Thomas considered Carley's grievance, determined her stated access was reasonable, and found that purchasing case law instead of renting was a reasonable alternative. Accordingly, the Court finds they did not merely deny Grievance 20063048710, but personally participated in restricting Carley's access to legal resources. Accordingly, Carley's claim may proceed against Defendants Thomas and Neven.

**4. Grievance 2006305413**

Defendant Najera denied seven of Carley's grievances, including Grievance 2006305413. (ECF No. 138-1 at 105.) On September 6, 2017, Carley grieved that Ruiz was deliberately attempting to prevent her access to the law library despite her need to prepare a motion in an open case. (*Id.* at 106.) Specifically, Carley grieved that Ruiz kicked her out of the library at her August 31, 2017 appointment because the deadline Carley gave to justify expedited access to the law library had passed. (*Id.*) Najera denied

the grievance, stating that Carley had had 115 minute appointments once per week each week in August, which "verifies appropriate law library access." (*Id.* at 105.)

Moreover, Najera ultimately approved the Sixth Correspondence Request, despite rejecting Grievance 20063013143 which grieved the denial of the Fifth Correspondence Request. (ECF No. 147-6 at 60.) The Court finds that Najera personally participated in limiting Carley's access to the law library and in determining whether she could correspond with Stojic. Accordingly, the Court will not dismiss Najera from this case.

**D. Qualified Immunity**

Because there is a dispute about whether Defendants violated Carley's First Amendment rights, summary judgment is not proper on the issue of qualified immunity.

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *See Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988-89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation ..." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *See Anderson v. Creighton*, 483 U.S. 635, 639-40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Dunn v. Castro*, 621 F.3d at 1196, 1201 (9th Cir. 2010).

///

"[J]udges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated . . . is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cnty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

As explained above, Defendants have not shown there is no genuine dispute of material fact whether Carley's First Amendment rights were violated. Because the fact-finder must determine whether Defendants deprived Carley of reasonably meaningful access to legal resources, the factfinder must necessarily also determine whether the first-prong of qualified immunity is satisfied. *See Tortu*, 556 F.3d at 1085.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 119) is granted in part and denied in part as specified herein. The motion is granted as to (1) Defendants Dzurenda, Daniels, and Hill; and (2) claims based on First Correspondence Grievance as discussed herein. The motion is otherwise denied.

DATED THIS 21st Day of September 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE